UNITED STATES, Appellee

v

CHARLES WYSONG, Jr., Sergeant First Class,
U. S. Army, Appellant

9 USCMA 249, 26 CMR 29

No. 10,352

Decided May 16, 1958

*Captain John F. Christensen* argued the cause for Appellant, Accused.
*First Lieutenant Jon R. Waltz* argued the cause for Appellee, United

States. With him on the brief were *Lieutenant Colonel John G. Lee* and *First Lieutenant Thomas M. Lofton.*

## Opinion of the Court

HOMER FERGUSON, Judge:

An official investigation was begun in July 1956 at Camp Schimmelpfenning, Honshu, Japan, to inquire into alleged incidents of sexual misconduct and immorality involving the accused's wife and minor stepdaughter and several members of his company. The accused had been away at the time these incidents occurred. The company commander became aware of the efforts on the part of the accused to impede the progress of this investigation by interrogating and threatening persons called to appear as witnesses. He counseled the accused to desist and refrain from such activities. The accused, however, rejected this advice and continued to make threats and accusations against men in the company. As a result, the company commander felt impelled to order the accused "not to talk to or speak with any of the men in the company concerned with this investigation except in line of duty." When asked if he understood the order, the accused replied in the affirmative. Subsequently, however, he approached one Specialist Faulkner, a witness in the investigation, and attempted to induce him to divulge whether or not he had made a statement and if so to reveal its contents. Later, he again approached Specialist Faulkner and one Private First Class Darroch and inquired concerning their proposed testimony. He allegedly stated that if Faulkner would "go ahead and help him out" he would return the favor by insuring that his stepdaughter would refuse to identify Faulkner as one of the men with whom she had engaged in acts of sexual promiscuity although in fact he was one of the men in question. On a later occasion he offered Faulkner $60.00 if he would refuse to testify at the general court-martial trial of Private First Class Darroch.

Upon these facts the accused was convicted of two specifications alleging the failure to obey a lawful order of his company commander, in violation

**250**

of Article 92, Uniform Code of Military Justice, 10 USC § 892, and of soliciting another to wrongfully refuse to testify at a court-martial trial, in contravention of Article 134 of the Code, supra, 10 USC § 934. After the court-martial's findings had been announced, defense counsel specifically requested an instruction that the maximum sentence for the solicitation offense was confinement at hard labor for four months and partial forfeitures of pay per month for a like period. The law officer rejected the requested instruction and instead advised the court with respect to the solicitation offense that the maximum permissible sentence was dishonorable discharge, total forfeitures, and confinement at hard labor for five years. The court-martial for all offenses imposed a sentence which included a punitive discharge, total forfeitures, and confinement at hard labor for nine months. The convening authority approved the findings but substantially reduced the sentence and a board of review subsequently affirmed both the findings and sentence as approved without opinion.

We granted the accused's petition for review to resolve the following issues: (1) the legality of the order, and (2) the correctness of the instructional maximum sentence. With regard to the first issue, it is clear beyond peradventure that the order in question was so broad in nature and all-inclusive in scope as to render it illegal. The justification offered by the company commander for issuing the order was that he "was worried about the consequences if the personnel of the company would continue the rumors and accusations and discussions. I felt it affected the combat capability of my unit, too much internal dissension." Unquestionably the order severely restricted the accused's freedom of speech. It not only restrained him from communicating with certain persons on duty but off duty as well. In addition, the order is

framed in such a manner that a literal reading could be interpreted to prohibit the simple exchange of pleasantries between the accused and those "concerned" with the investigation.

Another defect in the order is that of vagueness and indefiniteness in failing to specify the particular persons "concerned" with the investigation. Such an order might well have extended to the entire company. It appears from the record that the incidents which gave rise to the investigation were a matter of common knowledge to members of the company in general, and thus, in effect, the order sought to place the accused in a tight vacuum completely sealed off from all normal communicative exchange with those with whom he would be most likely to converse. We hold, therefore, that the order in question was illegal and consequently unenforceable.

We are not to be understood as intimating in any manner that an order of the type here sought to be employed could never attain the status of a legal order so as to make its violation the subject of a criminal action. If the order had been narrowly and tightly drawn and was "so worded as to make it specific, definite, and certain" it might well have been sufficient to support a conviction. United States v Milldebrandt, 8 USCMA 635, 25 CMR 139. While we fully appreciate the purpose sought to be achieved by the issuance of this order, we cannot place our seal of approval upon an order which is so broad as to practically prevent all speech—except in line of duty—regardless of the laudable motives intended. The findings of guilt of specifications 1 and 2 of Charge I are set aside and the same are hereby ordered dismissed.

II

Turning now to the second issue, we find that the accused was convicted of soliciting Specialist Faulkner "to wrongfully refuse to testify at the General Court Martial trial of Private First Class Howard C. Darroch in violation of Article 134, UCMJ, by paying him sixty dollars ($60.00) to do so." The conduct alleged is similar to that denounced in 18 USC § 1503.[1] There is ample authority to the effect that a proffered bribe to alter the testimony of a witness falls within the purview of this provision. United States v Russell, 255 US 138, 41 S Ct 260, 65 L ed 553, and Anderson v United States, 215 F2d 84 (CA 6th Cir) (1954).

In United States v Brown, 8 USCMA 255, 24 CMR 65, the accused was charged with "wrongfully and unlawfully" enticing others to engage in sexual intercourse with prostitutes in violation of Article 134 of the Code, supra. We held there that the law officer correctly instructed the court that the maximum authorized sentence was that imposable for the offense of pandering since the offense of which the accused had been found guilty was so closely related to that offense. The same principle is applicable here. The solicitation of which the accused was found guilty constituted a separate and distinct substantive offense which is generally referred to as obstructing justice. Such offense is similarly denounced in the Code of the District of Columbia, Title 22, § 22–701.[2] See

---

[1] "Influencing or injuring officer, juror or witness generally

"Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States . . . shall be fined not more than $5,000 or imprisoned not more than five years, or both. June 25, 1948, c. 645, 62 Stat. 769."

[2] "§ 22–701 [6 : 134]

"Definition and penalty.

"Whoever promises, offers, or gives, or causes or procures to be promised, offered, or given, any money or other thing of value, or makes or tenders any contract, undertaking, obligation, credit, or security for the payment of money, or for the delivery or conveyance of anything of value, to any . . . juror or witness, with intent to influence the decision, action, verdict, or evidence of any such person on any question, matter, cause, or proceeding or with intent to influence him to commit or aid in committing, or to collude in or allow any fraud, or make any opportunity for the commission of any fraud, shall be fined not more than five

**251**

Ladrey v United States, 155 F2d 417 (CA DC Cir) (1946). It is noted that the United States Code imposes a maximum authorized sentence of five years' imprisonment while the Code of the District of Columbia is limited to a maximum of three years. Here, the law officer instructed that the offense was limited to confinement at hard labor for five years. Where offenses are not specifically listed in the Table of Maximum Punishments, they remain punishable as authorized by the United States Code or the Code of the District of Columbia, "whichever prescribed punishment is the lesser." Paragraph

---

hundred dollars, or be imprisoned not more than three years or both. (Mar. 3, 1901, 31 Stat. 1330, ch. 854, § 861.)"

127c, Manual for Courts-Martial, United States, 1951. The Government concedes that the offense is limited to a maximum period of confinement of three years and that the law officer erred by instructing on the greater maximum sentence. We agree with the Government's concession.

The case may be disposed of by returning it to The Judge Advocate General of the Army for resubmission to a board of review for reassessment of the sentence on the basis of the remaining approved findings of guilt and in light of the reduced authorized maximum sentence applicable thereto. It is so ordered.

Chief Judge QUINN and Judge LATIMER concur.