UNITED STATES

v.

**Audria M. SMITH, 466 56 0269, Gunnery Sergeant (E-7), U.S. Marine Corps.**

**NMCM 85 4235.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 25 July 1985.

Decided 2 Sept. 1987.

**546**

Maj R.P. Walton, USMC, Appellate Defense Counsel.

Lt Mary E. Bolton, JAGC, USNR, Appellate Defense Counsel.

Lt Thomas J. Seaton, JAGC, USNR, Appellate Government Counsel.

Before COUGHLIN, RILEY and MIELCZARSKI, JJ.

MIELCZARSKI, Judge:

This case has been referred to this Court by the Judge Advocate General of the Navy pursuant to Article 69, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 869, for our review under Article 66, UCMJ, 10 U.S.C. § 866. Appellant was convicted of numerous bad check offenses, dishonorable failure to satisfy an obligation, dishonorable failure to pay a debt, and willfully disobeying a lawful order, in violation of Articles 123a, 134, and 90, respectively, of the UCMJ, 10 U.S.C. §§ 923a, 934 and 890.

In late August 1984, appellant, a Gunnery Sergeant and the Command Sergeant Major at the Communication-Electronics School, Twentynine Palms, California, agreed to sell her 1976 Cadillac to Lance Corporal (LCPL) Lowe, then a student at the school. Lowe obtained financing for the purchase from the Navy Federal Credit Union (NFCU) which sent the loan check to him via Captain Dalton, the Officer-in-Charge of Special Services at the command. The credit union requested Captain Dalton to act as an escrow agent and to release the check only upon receipt of proper title, registration, and inspection documents from the appellant. Appellant, however, persuaded Captain Dalton to release the loan check to her without delivery of the vehicle title document. She assured Captain Dalton that the title would be forthcoming immediately. In the following months, appellant failed to deliver the title document to either Dalton or Lowe; consequently, the NFCU "froze" LCPL Lowe's funds and severe financial difficulty ensued.

Appellant's commanding officer, Chief Warrant Officer 4 (CWO4) McGwinn, after receiving numerous complaints about the situation from LCPL Lowe's new command, spoke with the appellant about the matter. Appellant acknowledged that she did sell the car to LCPL Lowe and that she had not delivered the title. McGwinn advised her that LCPL Lowe's funds had been frozen by the NFCU as a result of her failure to deliver the title and that she

could rectify the situation simply by applying for a duplicate title with the Department of Motor Vehicles. She refused to do so without any explanation. CWO4 McGwinn then ordered appellant to produce either the original title or the money paid for the car by LCPL Lowe, or to apply for a duplicate title. Appellant did not comply with that order. These acts formed the basis of appellant's convictions of dishonorably failing to satisfy an obligation and disobeying a lawful order from a superior officer.

The Judge Advocate General has requested that the following issues be resolved:

A. WHETHER ADDITIONAL CHARGE III, SPECIFICATION 1, WHICH ALLEGES THAT THE ACCUSED DISHONORABLY FAILED TO SATISFY AN OBLIGATION TO TURN OVER TITLE TO A VEHICLE STATES AN OFFENSE COGNIZABLE UNDER ARTICLE 134, UCMJ. *CF. UNITED STATES V. BRAND*, 10 U.S.C.M.A. 437, 23 C.M.R. 3 (1959); *UNITED STATES V. KIRKSEY*, 6 U.S.C.M.A. 556, 20 C.M.R. 272 (1955); *MCM, 1984*, PT. IV, PAR. 71.

B. WHETHER, UNDER THE CIRCUMSTANCES OF THIS CASE, THE ORDER ALLEGED TO HAVE BEEN VIOLATED IN ADDITIONAL CHARGE I AND ITS SPECIFICATION CONSTITUTES A LAWFUL ORDER. *SEE UNITED STATES V. ROBINSON*, 6 U.S.C.M.A. 347, 20 C.M.R. 63 (1955); *UNITED STATES V. ENGLAND*, 30 C.M.R. 733 (C.G.B.R.1960); *MCM, 1984*, PT. IV, PAR. 14c(2)(a)(iii).

C. WHETHER CORRECTIVE ACTION IS REQUIRED TO REMEDY THE APPARENT VARIANCE BETWEEN THE FINDINGS OF GUILTY TO ADDITIONAL CHARGE III, SPECIFICATION 2, AS CHARGED, AND THE UNREBUTTED EVIDENCE AT TRIAL TO THE EFFECT THAT, IN AUGUST, 1984, THE ACCUSED PAID $600.00 OF THE $1,000.00 ALLEGED TO HAVE BEEN OWED. *CF. UNITED STATES V. LEE*, 1 M.J. 15 (C.M.A.1975).

The first issue concerns whether Specification 1 of Additional Charge III states an offense under Article 134, UCMJ. That Article proscribes, *inter alia*, all disorders and neglects to the prejudice of good order and discipline in the armed forces. Manual for Courts-Martial, United States, 1984 (MCM), Part IV, ¶ 60c(3). The Article contemplates only the punishment of that type of misconduct which is directly and palpably—as distinguished from indirectly and remotely—prejudicial to good order and discipline. MCM, 1984, Part IV, ¶ 60c(2)(a). *See also United States v. Snyder*, 1 U.S.C.M.A. 423, 4 C.M.R. 15 (1952); *United States v. Herndon*, 1 U.S.C.M.A. 461, 4 C.M.R. 53 (1952); *United States v. Frantz*, 2 U.S.C.M.A. 161, 7 C.M.R. 37 (1953).

The specific misconduct alleged here is that appellant dishonorably failed to satisfy an obligation. While the mere failure to discharge one's obligations, without more, does not constitute an offense under Article 134, *United States v. Brand*, 10 U.S.C.M.A. 437, 28 C.M.R. 3 (1959), *United States v. Kirksey*, 6 U.S.C.M.A. 556, 20 C.M.R. 272 (1955)[1], appellant's actions in this case fall within the purview of the statute in that they were directly and palpably prejudicial to the good order and discipline in the armed forces. The obligation that formed the basis for the charge and specification in question was to deliver the title to her car to LCPL Lowe upon sale. The sale of the car, to outward appearances a purely private transaction, was a matter of military concern given both the status of the parties to the sale and the involvement of the appellant's command (as escrow agent) therein. We are so convinced because of a number of considerations. First, the entire transaction took place within a military context—the transaction involving the sale of an automobile by a senior staff member of a training command to a junior enlisted student at that training command. Second, both the

---

1. These cases involved the negligent failure to maintain sufficient funds in a checking account and are factually distinguishable from the present case.

appellant and LCPL Lowe agreed to have the command's Special Services Officer, Captain Dalton, act as an escrow agent for the NFCU in the transfer. Third, appellant induced Captain Dalton to violate the terms of that escrow agreement when she, apparently relying both on the respect of her rank and her position at the school command, wheedled and cozened him into releasing the check to her without delivering the title document. Fourth, her failure to deliver the title amounted to an act of fraud or trickery upon LCPL Lowe, and resulted in the freezing of Lowe's funds by the NFCU, thus adversely affecting his morale and performance. In addition, it entangled two commands in numerous administrative efforts to rectify the situation. Furthermore, testimony elicited at trial revealed that appellant's failure to deliver the title constituted a violation of a California motor vehicle law requiring that title documents be transferred upon the sale of an automobile.[2] The fact of this violation alone may be sufficient basis for a viable charge under Article 134 in that paragraph 60c(2)(a) of the M.C.M. specifically provides that "[a]n act in violation of a local civil law ... may be punished if it constitutes a disorder or neglect to the prejudice of good order and discipline in the armed forces."

We accordingly find that appellant's failure to satisfy her obligation to turn over the title to her car to LCPL Lowe had a genuine and prejudicial impact on the good order and discipline in the armed forces and thus constituted an offense under Article 134, UCMJ. *United States v. Snyder, supra; United States v. Herndon, supra; United States v. Frantz, supra. See also* Winthrop, *Military Law and Precedents,* 723 (2d Ed.1920).

■ We further find that the specification as drafted was sufficient in that it contained the elements of the offense intended to be charged, apprised the accused of what she was going to meet at trial, and barred other proceedings for the same offense. *United States v. Sell,* 3 U.S.C.M.A. 202, 11 C.M.R. 202 (1953). *See also United States v. Schwartz,* 15 M.J. 109 (C.M.A.

1983); *United States v. Hopf,* 1 U.S.C.M.A. 584, 5 C.M.R. 12 (1952); *United States v. Lee,* 19 M.J. 587 (NMCMR 1984).

■ The second issue concerns whether the order to produce the title to the car or the money paid therefor by LCPL Lowe was lawful. Appellate defense counsel argues, and the Government appellate counsel in his brief agrees, that the order was not lawful in that "it had for its sole object the attainment of some private end." We disagree. The issue is not whether the order infringed on a personal transaction between the appellant and LCPL Lowe, but rather whether the order related to a valid military purpose. *See* MCM, 1984, Part IV, ¶ 14c(2)(a)(iii).

■ Whether a particular order is considered lawful is largely determined by examining the circumstances under which the order was issued. Winthrop, *Military Law and Precedents,* 576 (2d Ed.1920). The primary factor to examine is whether the order relates to a "military duty," a term which encompasses not only those pursuits normally construed as martial, but also all activities which are reasonably necessary to safeguard or promote the morale, discipline, and usefulness of the members of any particular command and which are directly connected with the maintenance of service good order. *United States v. Martin,* 1 U.S.C.M.A. 674, 5 C.M.R. 102 (1952). *See also United States v. Dykes,* 6 M.J. 744 (NCMR 1978). An order which is broadly restrictive of a private right is arbitrary and illegal in the absence of a connection to a military need. *United States v. Wilson,* 12 U.S.C.M.A. 165, 166–67, 30 C.M.R. 165, 166–67 (1961). *See also United States v. Smith,* 1 M.J. 156 (C.M.A.1975); *United States v. Martin, supra;* Article 90, UCMJ. Where such a connection exists, however, "[d]isorders arising out of transactions between members of the Armed Forces ... can be prevented by those in command even though the orders issued involved limitations on the transferring of private property." *United States v. Martin, supra,* at 104.

2. *See* CAL.VEH.CODE § 5600 (West 1965).

In this case, the purpose of the order to produce either the title to the automobile or the cash paid therefor was manifestly to resolve a personal matter gone awry between a senior staff noncommissioned officer and a junior enlisted Marine. Because the order infringed upon the private rights of the appellant, it is necessary to examine whether, under the circumstances, there was a valid military purpose underlying its issuance. In this regard, the same factors relevant in determining whether Specification 1 of Additional Charge III stated an offense under Article 134, UCMJ, are pertinent and determinative.

It is obvious that the order was given to remedy the perpetration of a fraud by the appellant upon LCPL Lowe and to put to rest the protracted administrative turmoil generated by the matter. This is a fitting subject in relation to the command's efficiency and morale, discipline, and usefulness, and is directly connected with the maintenance of good service order. At the very least, junior enlisted personnel should be protected from being defrauded by those senior to them. This is apparently what CWO4 McGwinn had in mind at the time he gave appellant the order in question. Accordingly, given the facts and circumstances of this case and especially the role of the command and the direct and palpable prejudicial impact on morale caused by appellant's deceitful actions, we find that the order given to the appellant related to a valid military purpose. *United States v. Martin, supra*; *see* MCM, ¶ 14c(2)(a)(iii).

In the third issue, the Judge Advocate General asks this Court whether sentence reassessment is necessary in light of the fact that appellant was found guilty of dishonorably failing to pay $1,000.00 when the evidence adduced at trial reflected that appellant had actually paid $600.00 of that amount. We agree that corrective action is necessary to remedy this variance. We disagree, however, that this variance warrants a rehearing on sentence. Appellant was convicted by a general court-martial of willfully disobeying her commanding officer, eight bad check offenses, and failing to satisfy an obligation, as well as failing to pay a just debt. She was sentenced to reduction to pay grade E–3 and total forfeitures for three months. The convening authority approved the reduction to pay grade E–3 but mitigated the forfeitures to $549.00 pay per month for three months. We find this sentence to be appropriate given both the serious nature of the offenses committed and the maximum punishment that could have been imposed. We are also convinced that the court-martial would not have adjudged a less severe sentence had the variance error not occurred. *United States v. Sales*, 22 M.J. 305, 309 (C.M.A.1986). Accordingly, the findings of the court-martial with respect to Specification 2 of Charge III shall be modified to show that the appellant dishonorably failed to pay $400.00 vice the $1,000.00 alleged. The findings and sentence as approved on review below are otherwise affirmed.

Senior Judge COUGHLIN and Judge RILEY concur.